Pamela MOORE, Plaintiff,

v.

UNITED STATES of America, Eva Lorraune Stillwell Moore, and Charles M. Moore, Defendants.

No. 33515.

United States District Court,
N. D. California, S. D.

March 2, 1955.

Robert P. McNamee, San Jose, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Richard C. Nelson, Asst. U. S. Atty., San Francisco, Cal., for defendant, United States of America.

Gullett & Gullett, Denison, Tex., and Burnett, Burnett & Somers, San Jose, Cal., Bressani & Hansen, San Jose, Cal., for defendants, Eva Lorraune Stillwell Moore and Charles M. Moore.

HAMLIN, District Judge.

This is an action by plaintiff Pamela Moore, widow of Lieutenant Charles Ray Moore, to recover the proceeds of a National Service Life Insurance Policy (N. S.L.I.) in the amount of $10,000 on the life of Lt. Moore. The policy was originally issued on December 23, 1943, and was in full force and effect on the date of Lt. Moore's death on or about April 19, 1953. The parents of Lt. Moore, defendants Eva Lorraune Stillwell Moore and Charles M. Moore, were designated in the policy as the principal and contingent beneficiary, respectively, at the time of its issuance. The plaintiff Pamela Moore was the wife of Lt. Moore from the date of their marriage on June 7, 1949, until his death. The plaintiff widow filed with the United States a claim to the benefits of the policy within a month after the death of Lt. Moore. This claim was disallowed, and plaintiff instituted the present action on April 23, 1954. She alleged that the insured, Lt. Moore, changed the beneficiary of the policy and named her as the principal beneficiary. The trial was had without a jury, and the question presented is whether or not the insured changed the beneficiary of this policy in favor of the plaintiff. We find that he did.

The express provisions of the policy relating to a change of beneficiary are these:

"The insured shall have the right to designate the beneficiary or beneficiaries of the insurance * * * and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries * * *." 54 Stat. 1009, as amended, 38 U.S.C.A. § 802(g).

"A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans Administration by the insured or his agent. * * *." 7 Fed.Reg. 8364, Oct. 16, 1942, as amended, 13 Fed.Reg. 7114, Nov. 27, 1948; 38 C.F.R., 1949 Ed., § 8.47.

A change of beneficiary in strict compliance with these provisions was never executed by Lt. Moore, the insured. But the law holds that strict compliance with these provisions is not required in order to change the beneficiary of such a policy.

"The cases are also unanimous that a mere intent to change a beneficiary is not enough. Such an intent must be followed by some affirmative act on the part of the insured evidencing an exercise of the right to change the beneficiary. Where the courts differ is as to the

degree of affirmative action necessary to effect a change. Literal compliance with the provisions of a policy is never necessary. * * * The strict law is that a change of beneficiary must be made in writing and in proper form. Where this has not been done, the courts will brush aside technicalities to give effect to the intention of the insured." Mitchell v. United States, 5 Cir., 1948, 165 F.2d 758, 760–761, cited with approval in Kendig v. Kendig, 9 Cir., 1948, 170 F.2d 750, footnote 1, p. 751.

■■ Thus, while the general rule expressed by the courts is that an intent to change and the doing of an affirmative act to effect that intent are sufficient to change the beneficiary, the difficult problem is to determine the nature and extent of the act necessary to effect such a change. The act must be in writing. Cohn v. Cohn, 1948, 84 U.S.App.D.C. 218, 171 F.2d 828. The form of the writing is immaterial. Farmakis v. Farmakis, 1949, 84 U.S.App.D.C. 297, 172 F.2d 291. And where the writing does not refer to any specific benefits, or is ambiguous, evidence is admissible to show the purpose for which the insured executed the writing and to show his understanding of the effect of the act. Rosenschein v. Citron, 1948, 83 U.S.App.D.C. 346, 169 F.2d 885; Shapiro v. United States, 1948, 2 Cir., 166 F.2d 240, certiorari denied sub. nom. Shapiro v. Shapiro, 334 U.S. 859, 68 S.Ct. 1533, 92 L.Ed. 1779; Prose v. Davis, 1949, 7 Cir., 177 F.2d 478.

■ The act necessary to effect a change has been described as (1) one which shows that the insured has done all that he could reasonably do to effect the change, Roberts v. United States, 1946, 4 Cir., 157 F.2d 906; (2) one which the insured might reasonably be thought to have supposed to be enough to accomplish the change of beneficiary, Senato v. United States, 1949, 2 Cir., 173 F.2d 493; Prose v. Davis, supra; (3) one which is done for the purpose of carrying out the intent to change or done in furtherance of that intent, Widney v.

United States, 1949, 10 Cir., 178 F.2d 880; Rosenschein v. Citron, supra; Sullivan v. Derifield, 1950, 86 U.S.App.D.C. 328, 181 F.2d 628. And the necessary act can be proved by statements or other acts which evidence a resort to, or the exercise of, the right to change beneficiaries. Mitchell v. United States, supra; Kendig v. Kendig, supra; Gann v. Meek, 1948, 5 Cir., 165 F.2d 857; Joseph v. United States, 1950, D.C.Pa., 89 F. Supp. 144; cf. Foster v. Winingham, 1948, 10 Cir., 169 F.2d 46; Butler v. Butler, 1949, 5 Cir., 177 F.2d 471. The law according to these cases is that the affirmative act required for a change of beneficiary is an act in writing which the insured reasonably believed was sufficient to effect a change of beneficiary and which the insured did for the purpose of effectuating a change.

■ The questions that must be answered, then, are whether or not a preponderance of the evidence shows that the insured, Lt. Moore, (1) had the intent to change the beneficiary of this policy in favor of the plaintiff, and (2) did an affirmative act in writing which he reasonably believed was sufficient to effect that change, and for the purpose of effectuating his intent to change. These questions are questions of fact. Coleman v. United States, 1949, 85 U.S.App. D.C. 145, 176 F.2d 469; Sullivan v. Derifield, supra. We find that the evidence in this case answers these questions in the affirmative.

The following items of evidence establish the fact that the insured had the intent to change the beneficiary of the policy here in question: *1.* The statement of the insured in June, 1951, to the plaintiff that under the new law if he signed the application for waiver of premiums on his insurance policy, she would automatically get $10,000 in the event of his death. *2.* The statement by the insured to the plaintiff in July, 1951, that he had signed a waiver of premium and that she was all taken care of. *3.* The statement by the insured to the plaintiff in February, 1952, that in the event of his death she would receive $15,000 in insurance

benefits ($10,000 from the government policy in issue here and $5,000 from a private insurance policy.) *4.* The statement by the insured to Lt. Parry in March, 1953, in the absence of plaintiff, that he had $15,000 worth of insurance which his wife would receive in the event of his death, and that he was going to take out an additional $5,000 so his wife would receive $20,000. *5.* Statement by the insured to Brigadier General Fromhold, U. S. Marine Corps (Ret.) in March, 1953, in the absence of the plaintiff, that he then had $15,000 of life insurance ($10,000 N.S.L.I. and $5,000 New York Life) and that his wife Pamela Moore was the beneficiary in each policy. *6.* The written statement by the insured in his "Confidential Information Data Sheet" that Pamela Moore was the "Name of Beneficiary". This statement was followed by affirmative answers to the questions: "Have you checked your life insurance within the last three months?" and "Are the beneficiaries named therein the desired ones?" There immediately followed the question: "Location of insurance policies", to which insured replied: "New York Life in possession of wife N.S.L.I. never received."

Thus, there are three statements by the insured to the plaintiff evincing his intent to change the beneficiary to her, and three statements by him to others in her absence corroborating his expression of intent. While we believe that the statements to Lt. Parry and Brig. Gen. Fromhold are sufficient to verify the insured's intent, certain contentions of the defendants in regard to the Confidential Data Sheet should be discussed. These contentions are, chiefly, (1) that the word "beneficiary" does not unequivocally refer to the type of beneficiary involved here, but rather refers to the beneficiary of death gratuities and other military benefits; and (2) that the insured himself indicated that the beneficiaries named on the policy, the defendants herein, were the correctly designated beneficiaries. Lt. (jg) Cramblett testified that the Sheet was designed to serve as a record of the personal effects of each member of the squadron. It was kept sealed and kept with certain other records by the squadron to be opened only in the event of death and to aid in the disposition of the personal affairs of the deceased member. He testified that the word "Beneficiary" was used to refer to the beneficiary of any insurance policies held by the officer, and that it could reasonably be interpreted to refer to such beneficiary. Lt. Milligan, a witness for the defendant, admitted on cross-examination that the word was probably so interpreted by an officer filling out the form. And the statement that the named beneficiaries were correct does not bear much weight in view of the fact that the insured also said that he had never received his N.S.L.I. policy and therefore had never seen who had been designated as beneficiary thereon.

A preponderance of the evidence clearly establishes the fact that the insured had the intent to change the beneficiary of this policy in favor of the plaintiff.

The plaintiff principally relies on the execution of the "Waiver of Premium" form by the insured to establish an act of the insured which he regarded as effectuating his intent to change, and which, coupled with his intent to change, is sufficient to prove a change of beneficiary. This form, signed by the insured and certified by a Naval officer, has been received in evidence. The language of this form, as executed by the insured, reads as follows:

"Subj: Waiver of premiums for term insurance

1. I do hereby apply for a waiver under the provisions of Section 622 of the NSLI act as amended [38 U. S.C.A. § 823], of premiums falling due on the following life insurance policy(ies): Policy numbers (if known): Unknown amount of insurance 10,000 amount of premium: 6.40 date of birth: 8–23–25 date of entry into present tour of active duty 10 Aug 1943

2. I understand that the period of waiver will expire 120 days after

the date of my separation from active service and that all premiums falling due more than 120 days after that date must be timely paid to the Veterans Administration in order to continue the insurance in force. I further understand that I must inform the Veterans Administration of any change of beneficiary or settlement option on this policy(ies).

3. I hereby authorize discontinuance of my allotment of payment of premiums on policy(ies) listed above.

"/s/ Charles Ray Moore
      Full Signature
907 West Rice St. Dennison, Texas
Mailing Address for Insurance Purposes"

The testimony as to the circumstances surrounding the execution of this document, and the understanding of the insured with respect to its legal efficacy, convince us that he did this act to effect a change of beneficiary of his policy to his wife, the plaintiff. The document was executed on 12 July, 1951, at Whiting Field, Florida. Lt. Parry testified that he and the insured had been assigned to the same squadron on the same orders for several years, and were assigned to the same squadron at Whiting Field in 1951. He stated that at a meeting of the squadron in May, 1951, at which the insured and he were present, the Insurance Officer told the men that the Servicemen's Indemnity Act had been passed, and that by its terms those men who had National Service Life policies could waive their premiums and come under the provisions of the new act. Under these provisions, according to the officer, each serviceman would have a free $10,000 policy and the benficiaries of the policy were automatically designated by statute, and were, in order, the wife, the children, the parents, the brothers and sisters of the insured. This evidence was supplemented by testimony of the plaintiff that in June, 1951, the insured told her as regards his insurance that if he signed a waiver of premiums, he would come under the new law and she would automatically receive $10,000 when he died. The plaintiff further testified that on July 12 or July 13, 1951, the insured told the plaintiff that he had signed the waiver of premiums and that she was all taken care of.

The new act referred to by the Insurance Officer, was the so-called Servicemen's Indemnity Act. Act of April 25, 1951, 65 Stat. 33, 38 U.S.C.A. §§ 823, 851 et seq. In brief, the act did provide that the life of each serviceman while on active duty would be insured for $10,000 payable to the wife, children, parents, brothers or sisters surviving the insured, in that order. It also added to the National Life Insurance Act of 1940 a clause which permitted those men who held National Service Life Insurance policies to waive the payment of premiums on those policies while on active duty, in which event the policies would be kept in force free of any payment of premium. 65 Stat. 37, 38 U.S.C.A. § 823. The insurance benefits directly established by the Servicemen's Indemnity Act were payable by statute to the wife, children, parents, or brother and sister who survived the insured, in that order, without requiring the serviceman to make a special beneficiary designation unless he desired to make a beneficiary designation different from that set out in the statute. But a waiver of premiums on National Service Life policies only operated to keep those policies in force, and did not operate to make the statutory designation of beneficiaries applicable to such policies. Therefore, the application for waiver of premiums signed by Lt. Moore did not in fact alter the terms of his policy as originally issued, which provided that the benefits of that policy would be paid to the persons designated as beneficiaries in the original policy or designated by a change in accordance with the governing regulations, as set out above. By its express terms, then, the policy here in question remained payable to the defendants Moore.

The testimony of Lt. Parry alone is enough to show that the insured believed that by waiving the premiums on his policy he was designating his wife the beneficiary of the $10,000 proceeds of the policy, inasmuch as he believed that the waiver made the proceeds payable by statute to his surviving wife, or to his surviving children or to his parents or brothers and sisters, in that order. When coupled with an intent so to do, an affirmative act which the insured reasonably believes is sufficient to change a beneficiary is adequate to effect that change. Senato v. United States, supra. The clause in the waiver form which provided that the insured must inform the Veterans Administration of any change of beneficiary does not destroy the force of this document to show he reasonably believed that he was changing his beneficiary. As read by one operating under the belief held by the insured, the clause in its context could well be taken to refer to a *future* change of beneficiary, that is, any change he might wish to make from his wife to someone else. Moreover, the insured believed that the waiver made the statutory designation of beneficiaries applicable to his policy, with his wife first in order, and he did not want to change this designation of beneficiary. Nor do we think that the designation of the Texas address as his address for "insurance purposes" detracts from the force of the document to show his reasonable belief that he changed his beneficiary. This Texas address had been furnished by the insured on his application for the original policy; and at the time the document was executed, the insured was about to move to a distant post where his address was unknown. Hence, we find that the execution of the form for application for waiver of premium was an affirmative act by which the insured reasonably believed that he had changed the beneficiary of his policy and by which he had done everything reasonably within his power to effect the change.

The probative force of the execution of the application for waiver of premium is augmented by the execution of the Confidential Data Sheet referred to above. The statements of the insured in the latter instrument, set out above, are sufficient to show that the insured *thought* he had made a change of beneficiary. Such a statement is probative of the fact that he did in fact make a valid change of beneficiary. Kendig v. Kendig, supra; Gann v. Meek, supra; cf. Butler v. Butler, supra.

Thus we find as a fact that with respect to the policy in question the insured (1) had the intent to change the beneficiary of the policy to his wife, Pamela Moore, and (2) did an affirmative act to effectuate that intent. The law laid down in the cases cited above holds that this is sufficient to constitute a change of beneficiary, and therefore we must conclude that the plaintiff, Pamela Moore, is the beneficiary of the policy and entitled to receive its benefits.

The benefits of the policy have been paid by the defendant United States to defendant parent of decedent at the rate of $289.90 per month in the total sum of $4,058.60. The payments began June 10, 1953, and were first interrupted when the plaintiff filed her claim to the benefits with the Veterans Administration. That claim was disallowed on May 26, 1953, and payments to the defendant were resumed on August 1, 1953, and continued until February 3, 1954, when they were again interrupted pending determination of beneficiary designation. Payment of benefits was resumed on April 20, 1954, and the last payment to defendant Moore was made on May 19, 1954, in the sum of $289.90. The complaint was filed on April 23, 1954. It is conceded by the plaintiff that the moneys paid by the United States to the decedent's parent (except the last monthly installment of $289.90 paid on May 19, 1954, after the complaint herein was filed) may not be recovered by her from defendant United States.

It is ordered that plaintiff is entitled to the proceeds of the life insurance policy in question and that she have judg-

ment in accordance with the prayer in her complaint.

Plaintiff is to prepare findings of fact, conclusions of law and judgment in accordance herewith.