### BRATCHER v. UNITED STATES et al.
#### No. 14669.

United States Court of Appeals Eighth Circuit.

July 8, 1953.

Flay E. Randle, Springfield, Mo., for appellant.

Claude T. Wood, Richland, Mo. (Robert Hyder, West Plains, Mo., on the brief), for appellee Ted Ballard.

Sam Wear, U. S. Atty. and Harry F. Murphy, Asst. U. S. Atty., Kansas City, Mo., on the brief, for appellee United States.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

The question is whether the District Court erred in holding that the insured, in a policy issued under the National Service Life Insurance Act of 1940, 54 Stat. 1008, as amended, 38 U.S.C.A. § 801 et seq., had intended and had effected such a change of beneficiary, as entitled the Veterans Administration to give it recognition in making payment of the proceeds. We are of the opinion that the court's holding in the situation was proper.

Harlan G. Ballard, a member of the armed services, 19 years old, executed an application for national service life insur-

ance, in the amount of $10,000, on August 6, 1950, while he was located in the combat zone in Korea. The application, which was filled out on a typewriter and apparently with clerical aid, designated his mother, Lillie Bratcher, as principal beneficiary and his father, Ted Ballard, as contingent beneficiary. The parents had been divorced since the insured was 7 years old, and each had married again.

Within three days, on August 9, 1950, while the insured was still in the combat zone, he executed another application form, for insurance in the same amount, designating the mother and father both as principal beneficiaries in the sum of $5,000 each. Notice of the statutory limitation of $10,000, 38 U.S.C.A. § 802(q), upon the amount of insurance which a service man could take out, was contained in the application blank. And the specific question also was asked in the application, "Do you now carry Government life insurance?," to which the answer filled in was "No."

The insured was killed in action on September 26, 1950. At that time no policy had as yet been formally issued to him. Both applications had been sent in by the field office for transmittal to the Veterans Administration at Washington, and both of them had been duly received by the Administration and were being subjected to routine processing when the insured's death occurred. The stamp upon the first application shows it to have been so received on August 21, 1950, while the second application bears a receival date of August 18, 1950.

The Veterans Administration thereafter erroneously issued policies of insurance upon both applications, with an effective date as to each from the date of the application. Upon discovery of its error, it made cancellation of the policy issued upon the application of August 9, 1950, but treated this application as constituting a change by the insured in his beneficiary designation as to the policy which it left in effect. It accordingly ruled that the mother was not entitled to receive the full proceeds of the policy of August 6, 1950; that the mother and the father each was a principal beneficiary under the policy for the sum of $5,000 by virtue of the beneficiary change; and that each was accordingly entitled to be paid this amount as a result of the insured's death.

The mother took an appeal from this ruling to the Board of Veterans Appeals, as constituted under 38 CFR, 1949 ed., §§ 19.0 to 19.7, and the Board in turn made a similar administrative decision. Among its comments, the Board said: "Although the policy of August 9, 1950 was subsequently cancelled, this does not change the fact that his beneficiary designation on the application of that date was his most recent expression as to whom he desired to receive the proceeds of his Government insurance. The statutory limitation on the amount of Government insurance which may be carried by any one individual was set forth on the application of August 9, 1950 and in addition this statutory limitation is well known among personnel in the service departments * * *." And as a matter of corroborative motive, the Board noted that "There are of record letters written by the serviceman to the father under dates of August 22 and 30 and September 2, 1950, which reflect an interest in the father's welfare and which indicate the usual close relationship existing between father and son."

The mother then instituted this action in the District Court, pursuant to 38 U.S.C.A. § 817, for recovery against the United States of the $5,000, to which the Veterans Administration and the Board of Veterans Appeals had ruled that the father was entitled as beneficiary. The Veterans Administration had paid the mother the other $5,000, to which it admitted that she was entitled. The mother made the father also a defendant in the suit, and he filed a counterclaim to have his right to the $5,000 legally declared and to be granted a judgment for it. The District Court, as we have indicated, denied the mother's right to recover and ordered the United States to make payment of the $5,000 to the father. The mother has appealed.

The statute as to national service life insurance expressly provides that, within the class of beneficiaries permitted by it,

"The insured \* \* \* shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries \* \* \*." 38 U.S.C.A. § 802(g).

The regulations of the Veterans Administration have facilitatingly attempted to make the right freely exercisable, by such broad provisions as the following: "A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans' Administration by the insured or his agent, and must contain sufficient information to identify the insured. Whenever practicable such notices shall be given on blanks prescribed by the Veterans' Administration. Upon receipt by the Veterans' Administration, a valid designation or change of beneficiary shall be deemed to be effective as of the date of the execution \* \* \*." 38 CFR, 1949 ed., § 8.47. And the regulations further recognize, as just as effective to change a beneficiary designation, any such notice received after the death of the insured, as one received before, unless payment of the proceeds has previously been made. Id.

The decisions of the courts too have taken a liberal path in according recognition to attempted beneficiary changes in national service life policies. With regard for the limitations and realities of military life, the courts have brushed aside general legal technicalities and have made their consideration a matter of evaluating practicably the substance in each particular situation. While keeping in mind, of course, the burden entitled to be exacted in the establishing of a change in beneficiary designation, they have dealt with a situation hospitably and primarily from the standpoint of the insured, and have in general recognized changes in beneficiaries as having occurred whenever they have found some persuasive indication of an intent on the part of the insured to make such a change and some written step taken by him to that end as an assumed effectuative act. See e. g. Moths v. United States, 7 Cir., 179 F.2d 824, 826, 827; Senato v. United States, 2 Cir., 173 F.2d 493, 495;

Farmakis v. Farmakis, 84 U.S.App.D.C. 297, 172 F.2d 291; Roberts v. United States, 4 Cir., 157 F.2d 906.

They have not required the written step taken to be of any particular form. Here, as throughout, they have looked at substance not form. Cf. Johnson v. White, 8 Cir., 39 F.2d 793, 796. Satisfied from the evidence of the insured's existing intent to change his beneficiary and of his having acted affirmatively and relyingly in some written manner to achieve that result, the courts ordinarily will accept his written effort, whatever its form may be, in legal accomplishment of his object, unless it is not possible rationally to give it that effect, in view of other controlling elements in the particular situation.

As has been noted, here the insured executed two applications for national service life insurance within three days, each for the full amount of legal coverage, with the coverage limitation set out on the application blanks, with the amount thereof also constituting a matter of common knowledge among servicemen generally, with the insured answering the question "Do you now carry Government life insurance?" in the second application "No", and with the two applications being made out identically except that the first designated his mother as principal beneficiary of the whole $10,000 and his father as contingent beneficiary, and the second designated both as principal beneficiaries in the amount of $5,000 each, with no contingent beneficiaries.

Clearly, it seems to us, the probative aspect and quality of these facts were such as to constitute a rational and substantial basis for a judicial finding that the insured, located as he was in the combat zone, decided to take out insurance on his life for the full amount of permitted coverage; that his first reaction was to make his mother the principal beneficiary and his father the contingent beneficiary of this insurance and his initial application was accordingly so executed; that on further reflection he concluded that he preferred to have both of his parents be principal beneficiaries in an equal amount, and so within three days executed another appli-

cation; that he either knew or assumed, as indicated from his answer in the second application that he was not carrying any Government life insurance, that no policy had as yet been issued on his first application and so believed that the execution of a second application form would effectually serve to supersede, substitute or change his initial beneficiary designation; and that he executed the second application for that purpose.

Indeed, it might well be argued that these circumstances could hardly reasonably be regarded as having any other realistic substance or significance in the present situation. At any rate, it would have to be held that they at least afforded an ample probative basis for the view which the trial court took. There is therefore no merit in the contention of appellant that the court's findings and judgment rested "upon mere speculation, conjecture and guesswork."

There also is no merit in appellant's further contention that the court's decision was improper as a matter of process, in that it was arrived at on the basis that she had failed to sustain the burden of proof resting upon her to establish her right as beneficiary, whereas legally the father had the burden of establishing that a change of beneficiary had occurred. The court's decision was not predicated upon any question or problem of burden of proof. It appraised the facts and circumstances as a matter of general probative persuasion and declared that it was adopting the finding of the Board of Veterans Appeals— to quote the language used in the court's memorandum opinion—"as clearly evidencing the intention of the veteran's desire to change the beneficiary."

It may be noted that, while the case was in form submitted to the court on motions by both parties for summary judgment, the parties presented all of the pertinent facts and circumstances of the situation to the court for consideration and disposition of the controversy on its merits, equivalently as a trial. And no contention is made here that it was not open to the court to make consideration and disposition of the controversy generally on the basis of the proceedings had.

Affirmed.